# CASES DETERMINED

# August Term, 1925.

---

UNION INDEMNITY COMPANY, Respondent, vs. RAILROAD
COMMISSION OF WISCONSIN, Defendant, and SMITH,
Commissioner of Insurance, Appellant.

*September 26—October 9, 1925.*

*Insurance corporations: Merger and consolidation: Unity of con-
trol by stockholders: Mutual exchanges of stock: Jurisdic-
tion of insurance commissioner: Of railroad commission:
Blue sky laws: Jurisdiction of administrative boards: When
reviewed.*

1. A "merger" exists where one corporation remains in being
   and merges in itself one or more other corporations; but the
   effect of "consolidation" is to work a dissolution of the cor-
   porations consolidating and to create a new one out of the
   elements of the former corporations.   p. 536.
2. The proposed transaction here involved between a domestic and
   a foreign insurance company, which contemplated operation
   of the companies under a common management but as sep-
   arate corporations, is *held* to amount to an exchange of stock
   between the stockholders of such corporations merely, and
   not to constitute a "merger" or "consolidation" which would
   bring it within the provisions of secs. 201.30 and 207.06 to
   207.12, Stats.   p. 536.
3. Such proposed transfer of stock was not affected by sub.
   (1) (j), sec. 183.26, Stats., the exchange not being effected
   by means of brokers or agents in the course of repeated
   transactions, and the owners not being underwriters within
   the meaning of the statute, and therefore neither a permit of
   the railroad commission nor the approval of the insurance
   commissioner is required to effect such a transfer; and
   neither the railroad commission nor the insurance commis-
   sioner had any jurisdiction to impede or impair the right of
   the stockholders to make such exchange.   p. 538.

Union Indemnity Co. v. Smith, 187 Wis. 528.

4. The subject of the jurisdiction of administrative boards and commissions is always open to the courts for review, though no question as to jurisdiction be raised in the trial court or mentioned in the briefs or arguments of counsel on appeal. p. 538.

5. The jurisdiction of the railroad commission and of the insurance commissioner is statutory and must be found within the four corners of the statutes relating thereto. Such jurisdiction cannot be conferred by stipulation or consent of the parties. p. 538.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed, with directions.*

This proceeding was commenced by an application to the *Railroad Commission of Wisconsin* for a permit to sell securities pursuant to the provisions of the Blue Sky Law. It was submitted by the *Union Indemnity Company,* an insurance company doing business in Louisiana and other states. The application contained as an exhibit a copy of a proposal made by the president and associates of the *Union Indemnity Company,* hereinafter called the *Louisiana Company,* in which the president, on behalf of the company, its officers and directors, agreed to accept from the stockholders of the Northwestern Casualty & Surety Company, a Wisconsin insurance company, hereinafter called the Wisconsin Company, their stock holdings for shares of the stock of the *Louisiana Company* on a basis therein proposed. It provided that the offer should not be binding until at least two thirds of the shares of the Wisconsin Company should be deposited with the First Wisconsin Trust Company of Milwaukee with the direction to make such exchange, and such deposit was to be made on or before June 1, 1925, or a day to be extended. It was provided that if less than two thirds of such stock should be deposited for exchange the officers and directors of the *Louisiana Company* should have the option to acquire the shares on the basis specified. Certain provisions were made for the payment of a possible

excess over the exchange valuation to the Wisconsin Company, if its net worth as of April 30, 1925, exceeded $800,000, and it was provided that if the shares were acquired by the *Louisiana Company* the affairs of the Wisconsin Company should be conducted according to the plan, a copy of which was annexed.

In the plan it was provided that nothing contained in it should bind any of the stockholders or officers of the Wisconsin Company to take, or procure to be taken, any corporate action. It was provided that the plan contemplated the continued operation of the Wisconsin Company as a separate institution. Provision was made for the continuance, for the balance of the year, of the salaries of certain officers of the Wisconsin Company. It was provided that an audit should be made of the Wisconsin Company as of April 30, 1925, and that sufficient reserves should be set up for all liabilities. It was provided also that a similar audit should be made as of December 31, 1925, to ascertain losses and profits, and if the results should show a net worth in excess of $800,000 as of April 30, 1925, additional stock of the *Louisiana Company* should be issued and delivered *pro rata* to the Wisconsin shareholders on a given basis. Provision was made in the event that there might be fractional shares and for adjustment in such cases. There was a provision that the stockholders of the Wisconsin Company consenting to the exchange would not object to the immediate assumption by the *Louisiana Company* of the handling and adjusting of claims against the Wisconsin Company with authority to settle and resist such claims, and provision was made for paying the expenses. This was stated to be for the purpose of relieving the Wisconsin Company as quickly as possible of its large overhead expense. Provision was also made for adjusting the expense of the audits.

The *Louisiana Company* agreed to place in trust, in said trust company of Milwaukee, a sufficient amount of its

shares of stock to effect the exchange contemplated, upon the submission of the proposal to the stockholders of the Wisconsin Company with the recommendation of its acceptance by its board of directors. It was provided that the *Louisiana Company* might deliver a like number of shares of a holding company and be entitled to receive in exchange the stock of the *Louisiana Company* so deposited or exchanged, and the shareholders of the Wisconsin Company, by the acceptance of the offer, should be deemed to have agreed to exchange such *Louisiana Company's* stock for an equal number of shares of the stock of the holding company. There was a provision as to when dividends were to commence, and it was provided that if two thirds of the shares of stock of the Wisconsin Company should not be acquired on or before July 15, 1925, the officers of the *Louisiana Company* who should have become officers of the Wisconsin Company would tender their resignations, and that the latter company should in that event be paid the fair value of the services rendered by it and its expenses. A provision was made for arbitration in the event of disagreement in the determination of the amount of such expenses and provision was made for the expenses of the First Wisconsin Trust Company of Milwaukee.

The proposal and the proposed plan of operation had been submitted to the stockholders of the respective companies. The application contained answers to a large number of questions and gave the information desired by the *Railroad Commission* as to the organization, officers, and mode of conducting the business of the *Louisiana Company*. It was stated that the entire authorized capital of the *Louisiana Company* was paid up and outstanding; that the entire capital stock that had been subscribed had been paid for and issued; that there were no other securities outstanding or authorized; that there would be no change in either the invested or working capital after the completion of the pro-

posed transaction; that there would be no stock sold and no payment to brokers or salesmen in the transaction; that under the laws of Louisiana the stock of an insurance company must be issued for cash and no stock will be issued in the future for services or other assets, but only for cash; and that no stock of the *Louisiana Company* is being issued to carry out the transaction for which the permit is requested. There was a full hearing before the *Railroad Commission,* and the *Commission* indicated its willingness to grant the permit subject to the approval of the insurance commissioner. Sec. 183.28 of the Statutes provides that "no permit shall be issued for the sale of securities of an insurance company or of a company whose business consists chiefly in owning and controlling the securities of insurance companies, without the approval of the insurance commissioner."

A hearing was had before the insurance commissioner. The insurance commissioner rendered a decision withholding his approval for the present on the ground that the offer did not, in his judgment, seem fair, just, and equitable, but indicated that he would approve an exchange if a greater number of shares of the *Louisiana Company* were offered as the basis of the exchange. Thereupon the *Railroad Commission* declined to issue the permit and the plaintiff commenced its action in the circuit court for Dane county, pursuant to sec. 183.33 of the Statutes, to review the action of the insurance commissioner in refusing to approve the permit and to compel such approval by appropriate relief. The *Railroad Commission* was made a party defendant, both parties answered, and the *Railroad Commission* set forth its willingness to issue the permit on the approval of the insurance commissioner. The insurance commissioner answered without raising the objections first made, but interposed other objections. In the circuit court a large number of stockholders of the Wisconsin Company were

permitted to intervene. At the trial in the circuit court no testimony was offered on behalf of the defendants. It was found by the trial court that the proof established without controversy that the proposed exchange would be to the great advantage of the holders of shares of stock in the Wisconsin Company and that this was not controverted by the insurance commissioner, and that the requisite number of holders of stock of the Wisconsin Company had evidenced their approval by depositing their shares of stock with the First Wisconsin Trust Company of Milwaukee. It was adjudged that the insurance commissioner be mandatorily enjoined and directed to approve the permit and that the *Railroad Commission* be mandatorily enjoined and directed to issue the permit applied for. From this judgment this appeal was taken.

The following decision was announced October 9, 1925:

"The following decision is filed; a formal opinion to be filed later:

"(1st) In this case it is held that the proposed transfer of stock between the stockholders of the Northwestern Casualty Company and the stockholders of the *Union Indemnity Company* is within the provisions of sub. (1) (j), sec. 183.26, Stats., which provides that 'The sale of any securities by the owner thereof for the owner's account, exclusively, such sale not being made in the course of continued or repeated transactions of a similar nature by the owner thereof and such owner not being the underwriter of such securities,' and therefore no permit of the *Railroad Commission* is required for the exchange nor is the commissioner of insurance required to approve such exchange.

"(2d) It is further held that the proposed transaction does not amount to a merger or consolidation which would bring it within the provisions of the law relating to the merger and consolidation of insurance corporations.

"(3d) That neither the *Railroad Commission* nor the commissioner of insurance has any jurisdiction to impede or impair the right of the stockholders, under the circumstances of this case, to make the proposed exchange."

*M. B. Olbrich* of Madison, for the appellant.

For the respondent there was a brief by *Robinson & Saltzstein* of Milwaukee, and oral argument by *B. F. Saltzstein.*

*James D. Shaw* of Milwaukee, for the intervening stockholders of the Northwestern Casualty & Surety Company.

The following opinion was filed October 20, 1925:

JONES, J.    It is the object of this opinion to state the grounds on which the decision announced October 9, 1925, was based.    At the trial in the circuit court the point was urged for the first time by the counsel for the insurance commissioner that the application should be denied for the reason, as alleged, that the proposed transaction would be a fraud upon the statutes of Wisconsin regulating the merger or consolidation of insurance corporations and was therefore illegal and void.    In the brief in this court, counsel for the insurance commissioner reviews the history of the negotiations, and reliance is placed in part on a proposal made by the *Louisiana Company* in 1923 to the officers of the Wisconsin Company to merge the two into a single institution to be known as the *Union Indemnity Company* by which there would be a complete merger, putting capital and surplus of the Wisconsin Company into that of the *Louisiana Company.*    After consideration the board of directors of the Wisconsin Company declined the proposition for the reason that they desired to handle their company independently.    They indicated that if some plan could be adopted by which, without merger, the two companies could be operated under a common management and the continuance of the

Wisconsin Company as a separate corporation with a sepa-
rate board of directors, it might be approved. Later nego-
tiations continued along the lines, not of a merger but of
operating the Wisconsin Company as a separate corporation
under general management with the *Louisiana Company*,
with the idea that the two companies could be operated
under practically the expense of one. The testimony is un-
disputed that the plan first proposed was abandoned and
that the application for a permit was pursuant to the later
negotiations. Counsel for the insurance commissioner relies
on the fact that the proposal was made, not by the stock-
holders of the *Louisiana Company* but by the company itself,
and that the offer was not to be effective unless two thirds
of the stock of the Wisconsin Company should be deposited.

It seems plain, however, from the testimony that it was
the intention to exchange stock belonging not to the *Louisi-
ana Company* but to its stockholders; that it was deemed
necessary that the proposal should be made not by individual
stockholders but by some responsible party, and that in
making the proposal the *Louisiana Company* was acting in
their behalf. Moreover, it was stated in the plan accom-
panying the proposal that the continued operation of the
Wisconsin Company as a separate institution was contem-
plated. It is important that in the application for the per-
mit, which is the basis of the entire proceedings, permission
was asked to exchange shares of the stock of the *Louisiana
Company by the owners thereof* for shares in the other
company. Much of the argument of counsel for the insur-
ance commissioner is based on the assumption that the stock
of the Wisconsin Company was to be acquired and owned
by the *Louisiana Company* as a corporation, and it is argued
that this would amount to a merger or a consolidation. We
think the testimony established beyond reasonable doubt that
the proposed transaction amounted to an exchange of stock
between stockholders in the two companies. The terms

"consolidation" and "merger" are often used somewhat loosely and sometimes as meaning the same thing. But it seems to be well settled that a merger does not mean the same thing as a consolidation, but exists where one corporation remains in being and merges in itself one or more other corporations; but the effect of consolidation is to work a dissolution of the companies consolidating and to create a new one out of the elements of the former ones. *Atlantic & Gulf R. Co. v. Georgia,* 98 U. S. 359; *Vicksburg & Y. C. Tel. Co. v. Citizens' Tel. Co.* 79 Miss. 341, 30 South. 725; *Adams v. Yazoo & M. V. R. Co.* 77 Miss. 194, 24 South. 200, 317, 28 South. 956, 60 L. R. A. 33; 7 Ruling Case Law, 155. Our statutes make special provision for the consolidation of insurance companies and prescribe the manner in which it may be accomplished. Secs. 207.06 to 207.12, inclusive. Another statute, sec. 201:30, also provides for the merger or consolidation of insurance companies with foreign or domestic companies. Both of these statutes make quite elaborate provisions for such combination, and in each case, among other things, the approval of the insurance commissioner is required. It follows that it cannot be said that such combinations are contrary to the public policy of the state provided the statutory requirements are complied with. No claim is made that the transaction in question was based on either of these statutes, and this tends to confirm the view that no merger or consolidation was contemplated. We hold that the proposed transaction does not amount to a merger or a consolidation which would bring it within the provisions of the law relating to the merger or consolidation of insurance corporations.

The claim is made by counsel for the insurance commissioner that in order to consummate the proposed plan it would be necessary for the *Louisiana Company* to issue stock, and there is considerable discussion in the briefs concerning the Wisconsin and Louisiana statutes as to the

conditions under which stock may be issued and held by insurance companies; but as we have indicated, we regard the plan as an exchange of stock between stockholders, and it appeared from the evidence and the application that no new stock of the *Louisiana Company* was to be issued to carry out the proposed exchange and therefore the discussion of this objection seems irrelevant. .

No one would question that before the enactment of the so-called Blue Sky Law any holder of shares of stock in these two companies had the same right to sell or exchange his certificate of stock as any other chose in action. We are faced with the question whether there is any language in that statute which restricted the proposed exchange. It is not necessary to discuss in detail the provisions of this elaborate statute. They have been to some extent examined in our former decisions. Sec. 183.26, sub. (1) .(a) to (g) inclusive, relates to securities not affected by the act. One of these subdivisions of the statute reads as follows:

"(j) The sale of any securities by the owner thereof for the owner's account, exclusively, such sale not being made in the course of continued or repeated transactions of a similar nature by the owner thereof and such owner not being the underwriter of such securities."

In paragraph (q) of the section it is prescribed that if it shall appear to the *Commission* that the sale of any issue of securities described in certain paragraphs including (j) of the section may be unfair or inequitable or work a fraud on the purchaser thereof, it shall require the person issuing or selling the same to file a verified statement giving information as to matters specified in the paragraph and may make an order temporarily prohibiting the sale of the securities. It is further provided that after an investigation and a hearing, on the finding of certain facts the sale of the securities may be prohibited or conditions of sale may be prescribed. Provision is made for requiring the discon-

tinuance of practices or representations that are found to be unfair or fraudulent, and under certain conditions named the facts ascertained may be presented to the attorney general or district attorney for action. Only a mere outline of this paragraph of the statute is here stated. This paragraph is included in the section dealing with securities not affected by the act. No action was taken by the *Commission* under this paragraph, but the proceeding was under provisions of the statute relating to the securing of permits for the sale or exchange of securities. It seems plain that the exchange of securities here contemplated was not "made in the course of continued or repeated transactions of a similar nature" by the owners of the certificates of stock and that they were not the underwriters of the securities within the meaning of paragraph (j) above quoted. The exchange was not to be effected by means of agents or brokers as defined by the statute. It seems to result that the securities and their exchange in the manner proposed were in no way affected by the statute and that neither the *Railroad Commission* nor the insurance commissioner had any jurisdiction to impede or impair the right of the stockholders under the circumstances to make the proposed exchange. No question as to the jurisdiction seems to have been raised by either party or called to the attention of the trial court. Nor was it raised in the argument or the briefs in this court. But the subject of the jurisdiction of administrative boards and commissions is always open to the courts for review. *Borgnis v. Falk Co.* 147 Wis. 327. 133 N. W. 209; *Porter v. Industrial Comm.* 173 Wis. 267, 181 N. W. 317. It was said in *Monroe v. Railroad Comm.* 170 Wis. 180, 174 N. W. 450: "The *Railroad Commission* being a tribunal of purely statutory creation, its power and jurisdiction must be found within the four corners of the statutes creating it."

Even if there had been at any stage of the proceeding an express stipulation purporting to give the *Railroad Commission* and the insurance commissioner jurisdiction of the

subject, it would not have availed, since the jurisdiction of those tribunals as to subject matter is conferred by law and not by consent. It follows that the judgment of the trial court must be reversed.

*By the Court.*—It is ordered that the judgment of the court below be and the same is hereby reversed, and the cause remanded with directions to the *Railroad Commission* to dismiss the proceedings. No costs to be taxed to either party, but the plaintiff to pay the fees of the clerk of this court.