Submission of controversy without action under C. S., ch. 12, Art. 25. The agreed facts are as follows:
1. The Carolina Coach Company is a North Carolina corporation chartered by the Secretary of State's office on 20 November, 1925, its certificate of incorporation being recorded in the office of the clerk of the Superior Court of Wake County, on 25 November, 1925. A copy of an amendment to the certificate of incorporation dated 2 October, 1926, also was duly filed in the office of the clerk of Superior Court of Wake County. The corporation is engaged in the motor bus transportation of passengers under franchises or permits issued by the Corporation Commission of the State.
2. The defendant, James A. Hartness, was Secretary of State on 26 March, 1929, and prior thereto, and has since that date been and still is Secretary of State, performing the functions of that office. The defendant, Nathan O'Berry, was Treasurer of the State of North Carolina on 26 March, 1929, and prior thereto, and has since that date been and still is Treasurer of the State, performing the functions of that office.
3. Prior to 26 March, 1929, the Southern Coach Company was a corporation of North Carolina, having its principal office and place of business in the city of Greensboro and conducting a transportation business similar to the business of the Carolina Coach Company.
4. On 25 March, 1929, following an agreement between the stockholders and the directors of the Carolina Coach Company on the one hand and the stockholders and directors of the Southern Coach Company on the other hand, an agreement of merger was executed by both corporations, whereby the Southern Coach Company was merged into *Page 526 
the Carolina Coach Company under and by virtue of the provisions of Article 13 of chapter 22 of the Consolidated Statutes of North Carolina, sections 1224-A to 1224-F, inclusive, said merger agreement being filed in the office of the Secretary of State of North Carolina on 26 March, 1929, said merger agreement with other exhibits attached hereto containing all of the facts necessary to an understanding of the question being presented to the court.
5. When the plaintiff corporation offered to file in the office of the Secretary of State the said merger agreement under the provisions of the law, the Secretary of State demanded and exacted of the plaintiff the payment of the sum of $1,100, being forty cents on each $1,000 of the authorized capital stock of the Carolina Coach Company, before filing or allowing said merger agreement to be filed. Thereupon, the plaintiff, Carolina Coach Company, paid under protest to the defendant, J. A. Hartness, Secretary of State, the sum of $1,100, and thereafter within 30 days filed a written demand for the return of the $1,100 with the said J. A. Hartness, Secretary of State, and Nathan O'Berry, State Treasurer. Thereafter the said J. A. Hartness, Secretary of State, and the said Nathan O'Berry, State Treasurer, refused to return or refund the said $1,100 and still hold same, as plaintiff contends, contrary to law. And the plaintiff, Carolina Coach Company, has performed all the requirements of the law with respect to payment under protest and demand and notice for refund.
The articles of incorporation and the merger agreement are made a part of the statement of facts. The question at issue is whether the plaintiff should have been required to pay $1,100 into the office of the Secretary of State before filing the merger agreement. Upon consideration of the agreed facts Judge Harris held that payment of the sum in controversy had been exacted without warrant of law and adjudged that the plaintiff recover of the defendants the sum of $1,100, the amount paid under protest by the plaintiff, and interest thereon from 26 March, 1929, together with costs. The defendants excepted and appealed.
The certificate of incorporation of the Carolina Coach Company, the plaintiff herein, was filed in the office of the Secretary of State on 20 November, 1925, and the stock subscribers, their successors and assigns, were thereby made a body corporate, bearing the name specified in the certificate. The total authorized capital stock was 45,000 shares without nominal or par value, 20,000 shares representing preferred stock, 20,000 shares class A common stock, and 20,000 shares *Page 527 
class B common stock. On 2 October, 1926, the charter was amended by changing the authorized capital stock to 27,500 shares without nominal or par value, 20,000 shares representing preferred stock, 2,500 shares class A common stock, and 5,000 shares class B common stock. The Southern Coach Company was incorporated 19 February, 1926, and the "agreement of merger" executed by the Carolina Coach Company and the Southern Coach Company was filed in the office of the Secretary of State on 26 March, 1929.
In 1901 the General Assembly enacted a statute imposing prescribed taxes for filing in the office of the Secretary of State certificates of incorporation, of increase or decrease of capital stock, of extension or renewal of corporate existence, of change of name or of business, and other certificates relative to corporations. P. L. 1901, ch. 2, sec. 96; Revisal of 1905, sec. 1233. This section was amended in 1920 and the tax was increased. P. L., Ex. Ses. 1920, ch. 1, sec. 7c. Under modified phraseology the amended act appears in the Consolidated Statutes as section 1218. The act authorizing the merger or consolidation of corporations did not go into effect until 27 February, 1925. P. L. 1925, ch. 77. It was perhaps for this reason that at the session of 1929 the General Assembly amended section 1218 by making it conform to the act of 1920, the amendment becoming effective on 20 February, 1929. The two pertinent sections of the latter statute are as follows:
"On filing any certificate or paper relative to corporations in the office of the Secretary of State, the following tax shall be paid to the State Treasurer for the use of the State:
1. For certificates of incorporation, forty cents for each thousand dollars of the total amount of capital stock authorized, but in no case less than forty dollars.
3. Extension or renewal of corporate existence of any corporation, the same as required for the original certificate of incorporation by this section." P. L. 1929, ch. 36.
If the written instrument executed by the plaintiff and the Southern Coach Company, referred to in the statement of facts as an "agreement of merger," or a "merger agreement," is in law a certificate of incorporation or an extension or renewal of corporate existence, the tax is undoubtedly collectible. The question of the plaintiff's liability for the tax turns, therefore, upon the legal effect of the agreement, taken in connection with the facts disclosed by the attached exhibits.
It may first be noted that in view of the statement of facts we are not concerned with the law relating to the voluntary conveyance of corporate property (C. s., 1138), or a sale of stock by one corporation to another (C. S., 1166), or a sale of corporate property under execution (C. S., 1201), or a sale of the property and franchises of a public *Page 528 
service corporation to satisfy a mortgage or other encumbrance as provided in section 1221. But, as hereafter pointed out, we are primarily concerned with the construction of certain other statutes.
A corporation is a creature of the law. "It cannot be created by mere agreement of the associates, but it is necessary to obtain sovereign sanction, for corporations today can be created only by or under legislative authority. The privilege which the Legislature confers upon human beings enabling them to act as a legal unit is the corporate franchise." 1 Fletcher, Cyc. Corp., sec. 14. The franchise is distinguishable from the capital and from the tangible property and assets of the corporation. A corporation may acquire, hold, and transfer property; but the sovereign is not indifferent to the public interest. Having granted the franchise, the State retains jurisdiction to exercise visitorial or supervisory powers over the management of the internal affairs of domestic corporations.
Legislative sanction is essential, not only to the creation, but to the merger or consolidation of corporations. Morawetz on Corp., secs. 544, 545. Recognizing this principle the coach companies based their agreement upon the act of 1925, which is cited above; and the legal effect of the agreement must be sought in the terms and purpose of the act which purports to authorize its execution. The plaintiff argues that under the provisions of this act corporations existing under the laws of the State may at their election enter into an agreement of merger or of consolidation, and that the agreement of the companies is a merger of one into the other, and not the creation of a new corporation as the result of consolidation. The defendants say that the agreement is in legal effect the consolidation of the two companies resulting in the creation of a new corporation.
There is, of course, a technical distinction between consolidation and merger. Merger has been defined as the absorption of a thing of lesser importance by a greater, whereby the lesser ceases to exist, but the greater is not increased. It is the uniting of two or more corporations by the transfer of property to one of them, which continues in existence, the others being merged therein. But ordinarily the legal effect of consolidation is to extinguish the constituent companies and create a new corporation. Bouvier's Law Dic., Cen. Ed., 799, 801; Black's Law Dic., 774; 12 C. J., 530; 40 C. J., 649. The distinction is clearly stated by Fletcher in 7 Cyclopedia, sec. 4662: "A merger, using the word in its strict legal sense, exists only where one of the constituent companies remains in being, absorbing or merging into itself all the other constituent companies, while in the case of a consolidation a new corporation is created and generally all the consolidating companies surrender their existence." It has accordingly been held that where one corporation *Page 529 
loses its identity and is merged in another, the latter preserving its identity and issuing new stock in favor of the stockholders of the former, the transaction is not a consolidation or the creation of a new corporation, but is merely the enlargement of the old one. News Pub. Co. v.Blair, 29 F.2d 955. But if a statute provides for the consolidation of corporations and not for merger in the technical sense, an apparent merger by the retention of the name of one and the abandonment of the name of the other does not prevent the operation of the rule that consolidation creates a new corporation and puts an end to the separate existence of the constituent companies. Chicago Title T. Co. v. Doyle, 259 Ill. 489, 47 L.R.A. (N.S.), 1066.
Whether, therefore, uniting two or more corporations works their dissolution and creates a new corporation depends upon the statutes under which the union is accomplished. And here we encounter the pivotal question whether under the act of 1925 the coach companies were merged or consolidated.
In an analysis of the statutes it is noticeable that they do not observe the technical distinction between "merger" and "consolidation." The terms are loosely applied; "merger" appears in the headlines of four sections of the act and once in the body of the several sections. It is not clear that it was not used indiscriminately as synonymous with consolidation; and the words "consolidated corporation" manifestly import a separate and distinct entity. This is obvious from the frequent recurrence of the word "new" as descriptive of the corporation created by the consolidation. Provision is made for converting the shares of each of the old corporations into stock of the "new corporation." Section 1224(a). Before receiving stock in the "new" or consolidated corporation, the shareholders of the old corporations must surrender to the "new" corporation their certificates of stock in the old corporation, and these certificates shall be canceled by the "new" corporation. Section 1224(b). If a person owning a lost, destroyed, or misplaced certificate of stock in one of the old corporations is dissatisfied with the terms of the "merger" he may have his stock appraised and paid for upon indemnifying the "new" corporation against loss. Section 1224(b). The statutes thus express the primary purpose of creating a new corporation by the consolidation of corporations existing under the laws of this State.
The plaintiff's contention is based upon the first clause in section 1224(a): "Any two or more corporations organized under the provisions of this chapter, or existing under the laws of this State, for the purpose of carrying on any kind of business, may consolidate into a single corporation which may be either one of said consolidated corporations or a new corporation to be formed by means of such consolidation." It is *Page 530 
insisted that the plaintiff is the "single corporation"; that it has absorbed the other; and that its identity and existence continue.
Whatever force would otherwise attach to this position is neutralized by other statutory provisions. An agreement signed by a majority of the directors is prerequisite to consolidation and to the so-called merger, whether the "single corporation" be one of the consolidated corporations or a new corporation formed by means of such consolidation. Without the agreement there can be neither merger nor consolidation; but the instant the agreement is signed, acknowledged, filed, and recorded the separate existence of the constituent corporations ceases and the consolidating corporations become a single corporation in accordance with the agreement. Section 1224(b). When the separate existence of the constituent corporations comes to an end the new corporation acquires not only the property, but the powers, privileges and franchises of the old corporations, which thereafter have neither property nor franchise. It is provided that all interests of the old corporations shall thereafter be the property of the consolidated corporations as effectually as they had previously been the property of the constituent corporations. Section 1224(b).
The single or consolidated corporation may issue bonds or other obligations, negotiable or otherwise, to an amount sufficient with its capital stock to meet such obligations as may be necessary to effect the consolidation and to secure the payment of its obligations by mortgaging its corporate franchise and its real and personal property. Section 1224(f).
The fact that the agreement is styled a merger is immaterial; it cannot affect our decision. The law controls the corporations; the corporations do not control the law.
We therefore conclude that the agreement of the coach companies was in contemplation of law a certificate of incorporation and that the plaintiff was liable for the tax imposed by the act of 1929.
Judgment reversed.