In the Matter of EDDIE CANTOR, Appellant.
MANUFACTURERS TRUST COMPANY, Respondent.

(Argued December 7, 1932; decided January 10, 1933.)

*Herman Shulman, Benjamin Algase* and *David L. Podell* for appellant. The reasonable interpretation of section 496 of the Banking Law is that its provisions apply to the dissenting stockholders of all parties to the merger. (*Mertz* v. *Guaranty Trust Co.*, 247 N. Y. 139.) Where there is any ambiguity in the statute the Legislature must be presumed to have intended a reasonable and practical result, and an interpretation in conflict with reason or justice will not be adopted. (*People ex rel. Burhans* v. *City of New York*, 198 N. Y. 439; *People* v. *Santoro*, 229 N. Y. 277; *Osborne* v. *International Ry. Co.*, 226 N. Y. 421.)

*Joseph M. Hartfield* and *John A. Gifford* for respondent. A stockholder of the receiving corporation has no right of appraisal under section 496 of the Banking Law. (*Matter of Bergdorf*, 206 N. Y. 309; *Bingham* v. *Savings Investment & Trust Co.*, 102 N. J. Eq. 302; *Matter of Timmis*, 200 N. Y. 177.)

LEHMAN, J. In January, 1932, an agreement for the merger of the Manufacturers Trust Company and the Chatham-Phenix National Bank and Trust Company was " submitted to the stockholders or shareholders of each of such corporations at a meeting thereof " called upon due notice. It was approved by the vote " of the stockholders or shareholders owning at least two-thirds in amount of the stock of their respective corporations," as required by section 490 of the Banking Law (Cons. Laws, ch. 2). The petitioner is a stockholder of the Manufacturers Trust Company. He did not vote in favor of

the agreement of merger at the meeting of the stockholders of the Manufacturers Trust Company, but made timely objection to the merger and demanded payment for his shares of stock. After the merger took effect, he applied to the court for the appointment of three persons to appraise the value of his stock. His application has been refused.

A merger agreement must " specify each corporation to be merged and the corporation which is to receive into itself the merging corporation or corporations." (Banking Law, § 488.) The statute does not contemplate the formation of a new banking corporation through the consolidation of two existing corporations. The result of the merger is that all the rights, privileges and franchises, and all the property of a corporation which is merged into another, are " transferred to and vested in the corporation into which it shall have been merged." Its corporate identity is lost; it ceases to be a corporate entity, while the corporation into which it is merged continues in existence and succeeds to all its " relations, obligations, trusts and liabilities." (§ 494.)

Before the merger agreement becomes effective it must " be submitted to the stockholders or shareholders of each of such corporations at a meeting thereof to be called upon notice." (Banking Law, § 490.) " Any stockholder or shareholder not voting in favor of such agreement of merger at the meeting prescribed in section four hundred and ninety of this article, may * * * demand payment for his stock or shares." (§ 496.) The right to demand payment is thus created and defined by the statute. The merger agreement which was submitted to the stockholders of the Manufacturers Trust Company specified that corporation as the corporation which was " to receive into itself the merging corporation." The question presented on this appeal is whether the right created by the statute is confined to stockholders of a corporation which loses its identity by merger into

another, or is broad enough to include stockholders of the corporation which continues to exist though with larger rights, privileges and franchises.

We are told that the Legislature would not have referred in section 496 to " *the* meeting prescribed in section four hundred and ninety " if it had intended that the statute should apply to the stockholders' meetings of *all* the corporations entering into the merger agreement as prescribed by the earlier section. That argument lacks substance, for the earlier section in terms prescribes " *a* " meeting of *each* of such corporations and " the " meeting referred to in the later section can refer only to the meeting of any of such corporations. In both sections the singular form is used and is intended to cover the same field. Certainly there could be no doubt that the Legislature so intended if the two sections had followed each other immediately. It is true, however, that in the intervening sections which immediately precede section 496, a distinction is recognized between corporations which are merged into another corporation and the corporation into which they are merged, and the respondent urges that this distinction must be read by implication into section 496.

The plain language of section 496 leaves little if any room for such implication, and even if by strained construction we should find such room, the implication itself would still rest on slender grounds. The intervening sections deal with the rights and obligations of the corporations; the sections we are construing deal with the rights of dissenting stockholders. The distinction that the corporation which is merged into another thereby loses its legal existence, while the legal existence of the corporation into which another is merged is continued, necessarily carries with it juridical consequences. For such juridical consequences the Legislature has provided in sections 494 and 495. The rights and obligations of the corporation which continues in existence remain as before

unless changed by legislative decree; the rights and obligations of the corporation which after the merger ceases to exist can continue only if transferred to the existing corporation. The Legislature has provided by section 494 for such transfer and continued existence: " Nothing appertaining to " the corporation whose existence was terminated " was to be lost, forfeited or destroyed." (*Matter of Bergdorf*, 206 N. Y. 309, 317.) After the merger, one corporation was to enjoy all the rights and be subject to all the obligations both of the corporation which absorbed another and of the corporation which was absorbed. At least in regard to corporate transactions with third persons the practical result is the same as if a new corporation had arisen through the consolidation of two existing corporations.

That is true, in all important respects, also with regard to the corporate structure itself. The agreement of merger " may provide the name to be borne by the receiving corporation and such name may be the name of *any* corporation which is a party to such agreement." It may name " the persons who shall constitute the board of directors or trustees of the receiving corporation." It may provide for the adoption of new by-laws for the corporation. (§ 488.) Thus the receiving corporation which continues in existence may have a new name, new directors and officers and new by-laws; and there is nothing in the statute which precludes the merging corporations from providing by the merger agreement that name, directors and by-laws shall be those of the corporation which in form has been absorbed by the receiving corporation. The Legislature quite probably assumed that ordinarily the merger agreement would provide that the largest and strongest corporation would by the merger absorb a weaker corporation or corporations; and that its stockholders would still dominate after the merger; but the Legislature has provided no standard by which determination of which corporation should receive the

other or others into itself shall be made. That is left to the free choice of the corporations which are parties to the agreement.

In only one unimportant respect does this choice itself necessarily create a practical distinction in the rights of the stockholders of the corporations which are parties to the merger. Certificates of stock in the receiving corporation will continue to represent an interest in an existing corporation. The stockholders in the other corporation or corporations, unless they object to the merger agreement, may automatically become stockholders in the receiving corporation, but their stock certificates represent on their face an interest in corporations which have ceased to exist. The receiving corporation may in such circumstances require the return of the original certificates held by each stockholder in the other corporations and may " issue in lieu thereof new certificates for such number of its own shares as such stockholder or shareholder may be entitled to receive under the merger agreement." (§ 495.) Because this section immediately precedes section 496, we are asked to read into the latter section an implied limitation that the right of a dissenting stockholder to demand payment for his stock refers only to stockholders who, if they had not dissented, might be compelled to surrender their original stock certificates.

The Legislature in section 495 has drawn a distinction where corporate form carries a practical consequence. We are asked to carry that distinction by implication into a field where juridical forms may carry no practical consequences. There is nothing in the language of the statute, including the juxtaposition of the two sections, which indicates that the Legislature intended such a distinction. The provisions of both sections are drawn from sections 37 and 38 of the Banking Law as enacted by the Laws of 1909, chapter 10 (Cons. Laws, ch. 2). There similar provisions are in the same juxtaposition, but the legislative intent that no such distinctions should

be drawn is perhaps even clearer than in the present revision, yet the change in language is slight and certainly indicates no change of legislative intent.

We realize that in time of financial disturbance a merger of a weak financial institution into a stronger institution may serve to restore confidence and be of great service to depositors and public alike. Then the fact that the receiving institution may, as the result of the merger, be compelled to use part of its assets for the payment of its own dissenting stockholders, might conceivably impede a merger and cause disaster. Perhaps dissenting stockholders should not be permitted to impede such a merger. Such arguments must be addressed to the Legislature. It must determine how far mergers should be facilitated and what safeguards should be imposed. It has determined that a dissenting stockholder may demand payment for his stock. It has provided that such a right may be enforced by any stockholder not voting in favor of a merger agreement at " the meeting prescribed in section four hundred and ninety " and the meeting prescribed in section 490 is a meeting of the stockholders of *each* corporation entering into the merger agreement. The right created by the Legislature cannot upon any ground of assumed public policy be limited by the courts to stockholders of a particular corporation.

The order of the Appellate Division and that of the Special Term should be reversed, with costs in all courts, and the motion granted, with ten dollars costs.

POUND, Ch. J., KELLOGG, O'BRIEN, HUBBS and CROUCH, JJ., concur; CRANE, J., not sitting.

Orders reversed, etc.