Complainant seeks specific performance of a contract to purchase property known as 796 Inwood Terrace, Cliffside Park, New Jersey. Defendants have answered and counter-claimed. The counter-claim seeks the return of defendants' deposit of $1,000 and reasonable expenses for examining the title to the premises in issue. The facts in the case are not disputed. The defendants question the complainant's right to hold and convey a marketable title because of a merger under the provisions of section 104 of the General Corporation Act of this state, as amended, P.L. 1929ch. 261 p. 478 (now R.S. 14:12-1). *Page 42 
On May 25th, 1934, under the provisions of section 104 of the General Corporation Act aforesaid, the following four corporations merged and adopted the name of the complainant herein: Continental Finance Corporation, Consumers Finance Corporation, the Nassau Finance Corporation and the Associated Industrial Bankers Corporation. The first three of them originally were organized under the General Corporation Act of this state, and the latter one was organized under the General Corporation Act of the State of Delaware. By the certificate of merger complainant became possessed of all the powers, privileges and rights expressed in the certificate of incorporation of Continental Finance Corporation, the continuing corporation, which was originally organized on June 3d 1926. It, in effect, is subject to and governed by that corporation's charter.
Each of these four corporations originally had been organized as a finance corporation operating for profit from the loan and use of money by the making of personal loans. They engaged in loaning money under the Small Loan Laws of New Jersey (P.L. 1932ch. 62 p. 94; R.S. 17:10-1 et seq.), New York and other states. When the merger was consummated in May, 1934, Continental Finance Corporation, the continuing corporation in the merger, was still actively engaged in this business.
Section 104 of the General Corporation Act, aforesaid, provides in part as follows:
"Corporations of this State or of this and other States may merge and consolidate.
"Any two or more corporations organized * * * under any law or laws of this State or any corporation organized under the laws of this State and any corporation organized under the laws of any other State for the purpose of carrying on any kind of business of the same or a similar nature, may merge or consolidate into a single corporation, which may be either one of said merging or consolidating corporation; * * * but the provisions of this act relative to merger and consolidation shall not apply to any railroad company, insurance company, banking companies, savings banks (or other corporation intended to derive profit from the loan and use of money), turnpike company, canal company."
The defendants question the validity of the merger and the power of the complainant to hold and convey the premises *Page 43 
which it contracted to sell to defendants. They say that under section 104 of the General Corporation Act, aforesaid, the four original corporations having the power, among other things, to lend money and having been engaged in the small loan business from time to time, are "corporations intended to derive profit from the loan or use of money," and consequently were barred from merging.
Section 104 of the Corporation Act was interpreted in Clarke
v. Gold Dust Corp., 106 Fed. Rep. 2d 598. Judge Biggs speaking for the Third Circuit Court of Appeals in that case, in part, said (at p. 602):
"The appellant lays emphasis upon the fact that by the amendment the American Linseed Company acquired the right to loan to other corporations in which it might become interested and that section 104 forbids a merger where one of the corporations intends to derive profit from the loan or use of money. The power to loan money, however, was clearly incidental to other powers conferred by the amendment. The prohibition of section 104 applies specifically to the merger of insurance corporations, banking companies, and savings banks deriving profits from the loaning of money. Under the rule of ejusdem generis the phrase `or other corporations' employed in section 104 must be restricted to corporations similar to those enumerated in the statute."
The complainant asserts that under recognized principles of statutory construction, the words "other corporations intended to derive profit from the loan or use of money" refer only to such corporations which were formed under special acts and not corporations with the incidental power to lend money which had been formed under the General Corporation Act. See Group No. 23,c., v. Association of the Sons of Poland, in which Vice-Chancellor Fielder, whose opinion was sustained by the Court of Errors and Appeals, 121 N.J. Eq. 102; 187 Atl. Rep. 356,
determined the right of corporations to merge under the act to incorporate associations not for pecuniary profit in the light of the provisions of the General Corporation Act.
It is my belief that the corporations denied the right to merge under section 104 comprise those corporations which *Page 44 
are incorporated under special acts. I believe the merger of these four corporations was authorized by the statute aforesaid.
The premises in question were acquired by the complainant in 1938, which was four years after the merger. The franchise and powers which the complainant possessed and exercised in 1938, and still acts under, as hereinabove observed, are derived from the original certificate of incorporation of Continental Finance Corporation. The merger did not affect the existence or the privileges of this (Continental Finance) corporation; it preserved and continued them. The only noticeable change in its existence was its title from Continental Finance Corporation to Personal Credit Plan. The complainant asserts that the Continental Finance Corporation under its charter is given power to acquire and convey real estate.
Article 6 of the agreement of merger filed May 25th, 1934, in the office of the Secretary of the State of New Jersey, reads as follows:
"Except in so far as herein otherwise specifically set forth, or as provided by Statute, the corporate franchise, rights and organization of said Continental Finance Corporation shall remain intact, and said `PERSONAL CREDIT PLAN' shall possess the powers, privileges and rights granted by and shall be governed by and be subject to the Certificate of Incorporation of Continental Finance Corporation."
The Consumers Finance Corporation, the Nassau Finance Corporation, and the Associated Industrial Bankers Corporation were by agreement merged with the existing Continental Finance Corporation. The charter of the latter corporation was not amended or changed except in the following respects: changing the location of its statutory office; changing the name of the agent in charge thereof; and amending article 4 thereof with respect to the capital stock of the corporation and providing "that the corporate franchise rights and privileges of the Continental Finance Corporation remain as set forth in the original certificate of incorporation."
In the Eighth Circuit Court of Appeals in Mercantile Home Bankand Trust Co. v. United States, 96 Fed. Rep. 2d 655, the court said: *Page 45 
"There is a recognized distinction as applied to corporations between the terms `merger' and `consolidation.' In a merger, one corporation absorbs the other but remains in existence, while the other is dissolved. In a consolidation, a new corporation is created, and the consolidating corporations are extinguished. In either event, the new corporation acquires all the assets, property rights, and franchises of the dissolved corporations, and their stockholders become its stockholders. Pinellas Ice andCold Storage Co. v. Commissioner, 5 Cir., 57 Fed. Rep. 2d188; Royal Palm Soap Co. v. Seaboard Air Line Railway Co., 5Cir., 296 Fed. Rep. 448; Ferguson v. Meredith, 1 Wall 25;17 L.Ed. 604, 609; Collinsville National Bank v. Esau,74 Okla. 45; 176 Pac. Rep. 514; Atlantic, c., Railroad Co. v. Georgia,98 U.S. 359; 25 L.Ed. 185; Cortland Specialty Co. v.Commissioner, 2 Cir., 60 Fed. Rep. 2d 937, 939; PrairieOil and Gas Co. v. Motter, 10 Cir., 66 Fed. Rep. 2d 309;Drovers' and Mechanics' National Bank v. First National Bank, 4Cir., 260 Fed. Rep. 9, 15."
Other authorities expressing the same principles are: Fordyce
v. Helvering, 76 Fed. Rep. 2d 431; Caroline Coach Co. v.Hartness, 152 S.E. Rep. 489; Graeser v. Phoenix Finance Co.,254 N.W. Rep. 859; Union Indemnity Co. v. RailroadCommissioner, 205 N.W. Rep. 492; Collinsville National Bank v.Esau, 176 Pac. Rep. 514; Fletcher Cyc. Corp. § 7075.
Vice-Chancellor Backes in Bingham v. Savings Invest., c.,East Orange, 101 N.J. Eq. 413; 138 Atl. Rep. 659, sustained the validity of a merger, and said:
"The East Orange bank and the Central Trust Company, of East Orange, entered into an agreement with the Savings Investment and Trust Company of East Orange, by a two-third vote of all the members of their respective boards of directors, to merge into the Savings Investment and Trust Company the 5,000 shares of capital stock of the former, each having 2,500 shares, to be exchanged for a like number of shares of the savings investment company.
 * * * * * * *
The savings investment company will continue after the *Page 46 
merger, as always, with promise of greater power and prestige. The other two merging companies will pass out of the picture. The savings investment company will retain its franchise and absorb theirs."
This decision was affirmed on appeal, Chief-Justice Gummere saying in 102 N.J. Eq. 302; 140 Atl. Rep. 321:
"In other words, the proposed merger, instead of destroying the vested rights of the stockholders or fundamentally changing the corporate contract of the savings investment and trust company, leaves the contract and the vested rights of the stockholders intact, and merely increases the original powers and franchises of the corporation and adds to its property and assets."
I am satisfied that the agreement of the four corporations in the instant case involves no consolidation. It is a merger; and by that merger the Personal Credit Plan, the complainant, has retained, and remains the same corporate entity as the Continental Finance Corporation. Its power to hold, acquire and convey real estate is here recognized and affirmed. Such power did not arise from the merger. It was derived from the charter of the Continental Finance Corporation.
The relief prayed for shall be granted.