**JONES, Collector of Internal Revenue, v. NOBLE DRILLING CO., Inc.**

No. 2650.

Circuit Court of Appeals, Tenth Circuit.

April 26, 1943.

722

Irving Axelrad, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Helen R. Carloss, and N. Barr Miller, Sp. Assts. to the Atty. Gen., and Charles E. Dierker, U. S. Atty., of Oklahoma City, Okl., on the brief), for appellant.

George N. Otey, of Ardmore, Okl. (Herbert L. Branan, of Ardmore, Okl., on the brief), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

On and prior to January 22, 1937, Noble Drilling Company, hereinafter called the parent, and Noble Drilling Company of Oklahoma, hereinafter called the subsidiary, were corporations organized and existing under the laws of Delaware. The parent owned all the capital stock of the subsidiary. Noble Drilling Company, Inc., was organized under the laws of Delaware on January 22, 1937. Prior to January 27, 1937, it had no assets, except the proceeds of 100 shares of its capital stock issued for $10 per share. All of its capital stock was owned by the parent. It was incorporated for the purpose of "consolidation and/or merger" with the parent and the subsidiary. The powers and purpose clauses in the certificates of the several corporations were substantially the same.

■ On January 27, 1937, an agreement of merger was entered into between the three corporations pursuant to 2091, § 59, of the Rev.Code of Delaware, 1935. The agreement provided that the three corporations should be "merged into a single corporation" which should be the "Noble Drilling Company, Inc.," hereinafter called the surviving corporation; that the surviving corporation should possess all the rights, privileges, powers, and franchises and should be subject to all the restrictions, disabilities, and duties of each of such corporations; that all property, real, personal, and mixed, and all rights, privileges, powers, and franchises of each of such corporations should vest in the surviving corporation; that all rights of creditors and all liens upon the property of such corporations should he preserved unimpaired; and that all debts, liabilities, and duties of such corporations should attach to the surviving corporation and might be enforced against it.

It further provided that the authorized capital stock of the surviving corporation should be its existing authorized capital stock, consisting of 6,000 shares of the par value of $10 each; that the outstanding capital stock of the subsidiary and the surviving corporation should be canceled; and that the stockholders of the parent should receive one share of full-paid and nonassessable capital stock of the surviving corporation for each share of capital stock of the parent held and owned by them on the date of the merger. The agreement set forth specifically the nature of the business and the objects and purposes of the surviving corporation, declared that it should have perpetual existence, and that the private property of its stockholders should not

be subject to its corporate debts, prescribed by-laws for it, prescribed the number of its directors, named its first three directors, fixed the time for its first annual meeting, named its corporate officers, and set forth provisions defining, limiting, and regulating the powers of the surviving corporation and of its directors and stockholders.

The merger agreement was without consideration. There was a statutory merger, not a mere sale of assets.

The parent had carried on its business on a fiscal year basis ending April 30 of each year. On January 27, 1937, the parent paid dividends to its stockholders in the total amount of $300,000. A dividend paid credit in the sum of $262,299.35 was allowed for that portion of the fiscal year ending April 30, 1937, during which it operated as a separate and distinct corporation. This left a dividend paid credit of $37,700.65, which was not used by it in its final income tax return.

The surviving corporation in its first return, covering the fiscal year ended January 31, 1938, did not seek a deduction of the $37,700.65, the unused dividend paid credit of the parent. But in its return for the fiscal year ended January 31, 1939, it sought to deduct as a dividend paid credit the amount of the unused credit of the parent. The Commissioner disallowed the deduction and after due notice, assessed an additional tax against the surviving corporation. On April 15, 1941, the surviving corporation paid the amount of the tax with interest and on April 29, 1941, duly filed with the Collector a claim for refund. On December 4, 1941, the Commissioner disallowed the claim. On December 2, 1941, the surviving corporation filed this action to recover the amount of the claim for refund. From a judgment in favor of the surviving corporation, the Collector has appealed.

Under the provisions of § 27 of the Revenue Acts of 1936 and 1938, 49 Stat. 1648, 52 Stat. 447, 26 U.S.C.A. Int.Rev. Acts, pages 837, 1021, the parent could have claimed the dividend paid credit for the fiscal year ending in 1939, had it continued to exist as a separate and distinct corporation. The question presented is whether the credit which belonged to the parent inured to the surviving corporation upon the merger.

2091, § 59, of the Rev.Code of Delaware, 1935, in part provides that "Any two or more corporations organized under the provisions of this Chapter, or existing under the laws of this State, for the purpose of carrying on any kind of business, may consolidate or merge into a single corporation which may be any one of said constituent corporations or a new corporation to be formed by means of such consolidation or merger"; and that the directors of such corporations, so desiring to consolidate or merge, may enter into an agreement prescribing the terms and conditions of the consolidation or merger, the mode of carrying the same into effect, and stating the other facts required by the General Corporation Law of the State of Delaware to be set out in certificates of incorporation, and the manner of converting the shares of each of the constituent corporations. 2092, § 60, of the Rev.Code of Delaware, 1935, provides that when an agreement shall have been signed, acknowledged, filed and recorded, as required in § 59, supra, "for all purposes of the laws of this State the separate existence of all the constituent corporations, * * * or of all such constituent corporations except the one into which the other or others of such constituent corporations have been merged, * * * shall cease and the constituent corporations shall become a new corporation, or be merged into one of such corporations, as the case may be"; that the corporation resulting from such consolidation or surviving such merger shall possess all the rights, privileges, powers, and franchises and be subject to all the restrictions, disabilities, and duties of each of the corporations so consolidated or merged; that all the property, real, personal, and mixed, of the constituent corporations shall vest in the resulting or surviving corporation; that all rights of creditors and all liens upon any property of the constituent corporations shall be preserved unimpaired; and that all debts, liabilities, and duties of the constituent corporations shall attach to the resulting or surviving corporation and may be enforced against it to the same extent as if they had been incurred or contracted by it.

It will be observed that by force of the Delaware statute, upon the merger the separate existence of the parent ceased, it became merged into the surviving corporation, the latter became subject to all the restrictions and disabilities of the parent and obligated to discharge all the debts, liabilities, and duties of the parent, and all the rights, privileges, powers, franchises, public and private, and all the prop-

erty of the parent vested in the surviving corporation.

■ The general rule is that a consolidation effects the dissolution of the original corporations and brings into existence a new corporation. And upon consolidation being effected under statutory provisions, absent language indicating a contrary intent, the constituent corporations will be deemed to be dissolved and their powers, privileges, and property vested in the consolidated corporation as a new corporation created by the act of consolidation.[1]

Where one or more corporations are merged into another corporation, the latter survives, while the former are dissolved.[2]

■ We are of the opinion that under the Delaware statute, upon the merger the parent and the subsidiary were dissolved and ceased to exist. Counsel for the surviving corporation assert that only the separate existence of the parent and subsidiary ceased and that they continued to exist as parts of the surviving corporation. It is true that the Delaware statute declares that the separate existence of the constituent corporations shall cease. But it provides that the effect of the agreement of merger or consolidation shall be to vest all of the public and private rights, privileges, and franchises, and all of the property of the constituent corporations in the resulting or surviving corporation. This, we think, indicates a clear intent that when one or more corporations are merged into another corporation, the latter survives, while the former are dissolved.

■■ A taxpayer is not entitled to take a deduction from net income as a matter of right. A provision for such a deduction is an act of legislative grace. To entitle a taxpayer thereto he must bring himself clearly within the applicable statute providing therefor.[3]

■■ Sections 27 of the Revenue Acts of 1936 and 1938 accord to a corporate taxpayer the benefit of a dividend carry-over and the right to deduct unused dividend paid credit on account of dividends paid by it during the two years preceding the taxable year. These sections do not in terms give to the corporate taxpayer the right to deduct dividends paid by another corporation. Here, the parent paid the dividends sought to be claimed as a dividend carry-over by the surviving corporation. The parent ceased to exist as a corporation on January 27, 1937. The surviving corporation was a separate and distinct corporation into which the parent had been merged. The right to a deduction is not transferable. It can be claimed only by the taxpayer to which it accrues and in determining the right to deductions, separate corporate entities will not be

---

[1] Chicago Title & Trust Co. v. Doyle, 259 Ill. 489, 102 N.E. 790, 791, 47 L.R.A.,N.S., 1066; Chicago Title & Trust Co. v. Zinser, 264 Ill. 31, 105 N.E. 718, 719, Ann.Cas.1915D, 931; Southern Illinois Gas Co. v. Commerce Commission, 311 Ill. 299, 142 N.E. 500, 502; Argenbright v. Phœnix Finance Co. of Iowa, 21 Del.Ch. 288, 187 A. 124, 126; Mercantile Home Bank & Trust Co. v. United States, 8 Cir., 96 F.2d 655, 659, 660; Pennsylvania Co., etc., v. Commissioner, 3 Cir., 75 F.2d 719, 721; Union Indemnity Co. v. Railroad Commission, 187 Wis. 528, 205 N.W. 492, 495; In re Buist's Estate, 297 Pa. 537, 147 A. 606, 607; Metropolitan Edison Co. v. Commissioner, 3 Cir., 98 F.2d 807, 810; Royal Palm Soap Co. v. Seaboard Air Line Ry. Co., 5 Cir., 296 F. 448, 450; Atlantic & G. Railroad Company v. Georgia, 98 U.S. 359, 363, 25 L.Ed. 185; Carolina Coach Co. v. Hartness, 198 N.C. 524, 152 S.E. 489, 491; Jewett City Sav. Bank v. Board of Equalization, 116 Conn. 172, 164 A. 643, 646, 647; Fletcher, Cyc. Corp., Perm. Ed., Vol. 15, § 7077.

[2] Mercantile Home Bank & Trust Co. v. United States, 8 Cir., 96 F.2d 655, 659, 660; Cantor v. Manufacturers' Trust Co., 261 N.Y. 6, 184 N.E. 474, 475; Union Indemnity Co. v. Railroad Commission, 187 Wis. 528, 205 N.W. 492, 495; Vicksburg & Y. C. Tel. Co. v. Citizens' Tel. Co., 79 Miss. 341, 30 So. 725, 728, 89 Am.St.Rep. 656; Metropolitan Edison Co. v. Commissioner, 3 Cir., 98 F.2d 807, 810; Royal Palm Soap Co. v. Seaboard Air Line Ry. Co., 5 Cir., 296 F. 448, 450; Carolina Coach Co. v. Hartness, 198 N.C. 524, 152 S.E. 489, 491; Jewett City Sav. Bank v. Board of Equalization, 116 Conn. 172, 164 A. 643, 646, 647; Fletcher, Cyc. Corp., Perm. Ed., Vol. 15, §§ 7079, 7082.

[3] Ryan v. Alexander, 10 Cir., 118 F.2d 744, 749; Weber Flour Mills Co. v. Commissioner, 10 Cir., 82 F.2d 764; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348; Helvering v. Independent Life Ins. Co., 292 U.S. 371, 381, 54 S.Ct. 758, 78 L.Ed. 1311; Barbour Coal Co. v. Commissioner, 10 Cir., 74 F.2d 163; Darby-Lynde Co. v. Commissioner, 10 Cir., 51 F.2d 32, 33.

disregarded.[4]  We are of the opinion that Helvering v. Metropolitan Edison Co., 306 U.S. 522, 59 S.Ct. 634, 83 L.Ed. 957,[5] relied on by counsel for the surviving corporation, is distinguishable from the instant case.  In that case, a corporate taxpayer had acquired the assets and assumed the liabilities of a subsidiary corporation. Among the liabilities assumed were bonds issued by the subsidiary at a discount.  The discount was in the nature of deferred interest.[6]  The corporate taxpayer redeemed the bonds.  The question presented was whether it could deduct the unamortized bond discount paid by it.  In that case, the corporate taxpayer sought the deduction of deferred interest paid by it.  In the instant case, the surviving corporation seeks to avail itself of a deduction of dividends paid by another corporation.  That case did not turn upon the question of whether the subsidiary was dissolved and ceased to exist as a corporation when it became merged into the corporate taxpayer,[7] or whether it continued to exist as a component part of the corporate taxpayer, but rather upon the question whether the corporate taxpayer became liable for the obligations of the subsidiary by operation of law or through a contractual undertaking. If the corporate taxpayer acquired the assets of the subsidiary by contract for a stipulated consideration, it would be a reasonable assumption that, in fixing the amount of consideration to be paid, it would give regard to and make due allowance for the bond discount to be assumed and paid by it; whereas, if the obligations were assumed by operation of law, it would have no opportunity so to do.  After considering two Pennsylvania statutes on merger or consolidation of corporations, the court in that case concluded that there was a statutory merger, that the corporate taxpayer became liable for the debts of the subsidiary by operation of law, and that the corporate taxpayer could deduct the unamortized bond discount paid by it.

The judgment is reversed and the cause remanded, with instructions to dismiss the action.

---

[4] Weber Flour Mills Co. v. Commissioner, 10 Cir., 82 F.2d 764, 765; Brandon Corporation v. Commissioner, 4 Cir., 71 F.2d 762, 763.

[5] See, also, Western Maryland Ry. Co. v. Commissioner, 4 Cir., 33 F.2d 695.

[6] Chicago, R. I. & P. Ry. Co. v. Commissioner, 13 B.T.A. 988, 1033; Western Maryland Ry. Co. v. Commissioner, 4 Cir., 33 F.2d 695, 697.

[7] As a matter of fact, the subsidiary did not continue to exist as a corporation. The Pennsylvania statute provides that when one corporation merges into another, the former shall cease to exist, and in In re Buist's Estate, 297 Pa. 537, 147 A.

606, 607, the court said: "The merger of two or more corporations is neither a sale nor a liquidation of corporate property, but a consolidation of properties, powers, and facilities of the constituent companies, forming a new corporate entity.  Merger is a method of incorporation by two or more companies into a single corporate body.  While the constituent companies are deemed dissolved, their powers and privileges, to the extent authorized by the merger contract or the law, are vested in the merged company as a new corporation.  This entity is distinct from that of its constituents, but it draws its life from the act of consolidation."