GLENNON F. ARGENBRIGHT, FRANCES M. ARGENBRIGHT, GLENNON F. ARGENBRIGHT, Guardian of Harriet Argenbright, Mary Argenbright, Zelda Argenbright and Leland Argenbright; EMMA ARGENBRIGHT, Guardian of Myron Argenbright, and ANN HUSTON,

*vs.*

PHOENIX FINANCE COMPANY OF IOWA, a corporation of the of the State of Delaware; PHOENIX FINANCE COMPANY OF OHIO, a corporation of the State of Delaware; PHOENIX FINANCE COMPANY OF DAVENPORT, a corporation of the State of Delaware; PHOENIX FINANCE COMPANY OF MILWAUKEE, a corporation of the State of Delaware; PHOENIX FINANCE COMPANY OF ST. LOUIS, a corporation of the State of Delaware; PHOENIX FINANCE COMPANY OF AMERICA, a corporation of the State of Delaware; PHOENIX FINANCE SYSTEM, a corporation of the State of Delaware; and PHOENIX FINANCE CORPORATION, a corporation of the State of Delaware.

*New Castle, July* 14, 1936.

*Aaron Finger,* of the firm of Richards, Layton & Finger, of Wilmington, and *Allen Whitfield,* of Allen & Whitfield, of Des Moines, Iowa, for complainants.

*Christopher L. Ward, Jr.,* of the firm of Marvel, Morford, Ward & Logan, of Wilmington, for defendants.

THE CHANCELLOR: The complainants are stockholders in the first five corporations named in the caption as defendants. They hold preferred and participating stock issued by those corporations, none having voting rights. All voting rights were conferred by the respective charters upon the common stock which was owned or controlled by one John A. Thompson and wife.

In January 1932 the five corporations in which the complainants held stock and the sixth and seventh defendant corporations named in the caption, by separate corporate proceedings, entered into separate transactions with the eighth defendant corporation named in the caption, *viz.*, Phœnix Finance Corporation, whereby each of the seven corporations transferred all of its assets to Phœnix Finance Corporation in consideration for its eight per cent. gold bonds, preferred stock, participating stock and cash, the several amounts and quantities of each being based on the net asset value of the outstanding preferred stock of each of the transferring corporations. These several proceedings were taken in contemplation of each other and were designed for the purpose of bringing all the business, assets and affairs of the several Phœnix companies, which were engaged in the small loan business, under the ownership and management of one company. The complainants have never consented to the proceedings which their corporations took. They never expressed dissent, however, until this bill was filed on May 20, 1935, over three years after the event.

The complainants denominate the proceedings which the corporations took in January 1932 as a common law merger or consolidation, meaning thereby that they were neither a merger nor consolidation under the statute. The defendants do not contend that there was any pretense at a statutory merger or consolidation. If what took place was a common law merger or consolidation, as argued by the complainants, then the complainants contend that nothing short of the unanimous consent of all stockholders could validate the proceedings, and, as the complainants never

consented, the proceedings may be regarded by them as void and the complainants accordingly entitled to appropriate relief in equity.

The defendants on the other hand contend that the transactions which the seven corporations severally engaged in with Phœnix Finance Corporation were transactions of sales of assets under *Section* 64 *A* of the *General Corporation Act* (*Rev. Code Del.* 1915, § 1978 *A*. as amended by 36 *Del. Laws, c.* 135, § 19) under which all eight of the corporations were incorporated Each transaction, so the defendants insist, was consummated independently of the others and, though contemplated by, was not contingent for its accomplishment upon the consummation of the others. The proceedings, the defendants say, in all respects complied with the requirements of *Section* 64 *A* and the result therefore is not assailable on the theory of law applicable to mergers or consolidations of any sort.

Answer to the question of whether or not the transactions referred to were transactions of sale, will determine the pertinency of a great part of the argument which the complainants' brief presents. The form which the several transactions took was that of a sale of assets under the section referred to. No contention is made to the contrary. Nor is anything alleged by the bill to show that the procedure required by the section was deviated from in any particular. The only possible circumstance that I can glean from the lengthy recitals of the bill which can be laid hold of as indicating a scheme of consolidation of the existing companies, is the circumstance that Thompson and his wife, by reason of their voting control in the several companies, had it in their power to cause each to sell its assets to the same purchaser and thus effect the result of bringing all their assets into the ownership of one concern. This result was an incident however to the peculiar personal position of Thompson and wife. It was not a result which the seven corporations in their corporate capacities concerted together to accomplish.

When a consolidation or merger has taken place under the statute, the old corporations have their identity absorbed into that of the new corporation or the one into which they were merged. *Section* 60 of the *Act* (*Rev. Code* 1915, § 1974, as amended by 35 *Del. Laws, c.* 85, § 19). There was nothing like that in this case. The consideration for the assets in each case was to be paid to the selling corporation. Its stockholders adopted resolutions directing the distribution of the assets, and in each case proceedings were authorized to effect the dissolution of the corporation as a distinct corporate entity. Dissolutions of all seven of the corporations were respectively completed under the statute by May 23, 1932.

While in every merger a sale of assets is involved (*Cole, et al., v. National Cash Credit Ass'n.,* 18 *Del. Ch.* 47, 57, 156 *A.* 183, 188), yet the converse is not true, *viz.,* that in every sale of assets a merger or consolidation is involved. If it were otherwise, every proceeding under *Section* 64 *A* would spell a merger or consolidation. In its last analysis the argument of the complainants at many of its stages seems to require for its acceptance that if a sale of all the assets is made in consideration of stock or securities of the purchasing corporation, as the statute allows, a merger or consolidation, if not statutory yet at common law, results. That view is at variance with the Act. Whether it would be sound in the absence of the Act as a common law proposition, it is unnecessary to say. It cannot be accepted, however, in light of the Act's provisions.

It seems quite clear from the bill which goes into elaborate details in its recital of the history of the transactions involved, that what was done by each of the five corporations in which the complainants hold stock as well as by the other two, was to sell all the corporate assets to the Phœnix Finance Corporation, the eighth defendant, for the lawful consideration before mentioned. It was in each case a sale under *Section* 64 *A.* The Supreme Court of Iowa, in reviewing the identical state of facts which this bill pre-

sents, reached the same conclusion. *Graeser v. Phœnix Finance Co. of Des Moines, et al.,* 218 *Iowa,* 1112, 254 *N. W.* 859.

But, say the complainants, even if the transactions be deemed to be sales under *Section* 64 *A,* they were induced by the fraud of the purchaser, and hence are voidable. If so, it is contended, rescission and restoration to the *status quo ante* ought to be awarded as relief at the suit of non-consenting stockholders, or, if that relief be impractical, the purchasing corporation ought at least to be decreed to pay the non-consentors the value of their stock as of the date of sale and be decreed to hold the purchased assets subject to the lien of the amount decreed to be paid.

This contention raises the question of whether fraud induced the sales. One element of fraud is charged to have been this, that the purchaser did not assume all the obligations of the seller which by the terms of sale it agreed to assume. The variation between what the purchaser was to assume and what it actually did assume by the executed contract of sale, is evidenced only by variations in the language which defines the liabilities actually assumed as contrasted with the language in the resolution of the stockholders authorizing the transfer of assets by the seller. There is no allegation that the obligations actually assumed were less than all the obligations that actually existed. But the point is not worthy of discussion in its relation to fraud in securing the contract. If the seller was injured by the restricted language of assumption, the injury was not in inducing the execution of the contract but in its performance.

Another element in which fraud in securing the contract is said to have consisted is that the assets were fraudulently undervalued. The complainants charge that goodwill was not included in the valuation. I do not think that fraud can fairly be predicated upon a failure to purchase goodwill, unless a showing of special facts justifies it. But even if it were otherwise, taking the case in the view

which the complainants insist upon, namely, as the case of a consolidation, it appears than none of the selling companies was paid for its goodwill. Where that is the case ordinarily there can, except possibly in very extraordinary circumstances, be no just ground of complaint, for all are treated alike.

The fraud based on inadequacy of price alleged to have been paid for the assets is demonstrated entirely by adjectives. The alleged inadequacy, if it exists, may consist of either an under-valuation of the assets sold or of an over-valuation of the securities paid. It must be one or the other. The bill makes no attempt to show facts from which an over-valuation of the securities paid can be inferred not to say asserted. Looking at the obverse side of the matter, *viz.*, upon whether the assets sold were under-valued, the bill fails to exhibit anything but the epithet of fraud. The fact is that the net value of the assets, which was the measure of the purchase price, was taken from the seller's books. But the bill insists that the book values were written down in striking the balance sheet. How much, is not stated. The court has no way of knowing in even a casual way whether the write-down was such as to suggest even a suspicion of fraud.

In *Graeser v. Phœnix Finance Co. of Des Moines, et al., supra,* the Supreme Court of Iowa expressly found from the facts before it not only that there was a sale in each instance of all the assets to Phœnix Finance Corporation under *Section 64 A,* as disinguished from a consolidation, as above stated, but as well that the allegation of fraud attending the sale was not supported by the proof. The opinion in that case indicates that the grounds here urged in support of the charge of fraud were fully examined by the court and rejected as insufficient. I believe I have noticed in what has already been said every aspect of the alleged fraud which might be left in doubt as not having been before the Iowa court. Any facts alleged here which might

possibly be by way of addendum to those before the Iowa court, are not sufficient as alleged to change the result.

The complainants contend that the observations of the Iowa court upon the questions of whether the transactions were sales under the act or common law consolidations and whether there was fraud, were *dicta* only. With this contention I disagree insofar as the purchasing company, Phœnix Finance Corporation, is concerned. I shall not take the time to demonstrate how in my opinion the opinion of the Iowa court is a direct decision adjudicating against the liability of Phœnix Finance Corporation to respond to stockholders in the same class with the complainants for the value of their stock in the selling companies. It did adjudicate adversely to such liability. If so, it would necessarily follow *a fortiori* that the relief of recission would likewise have been denied by the Iowa court. As to the absence of liability of Phœnix Finance Corporation to persons situated as are the complainants either in their individual or derivative right, I agree with the conclusion reached by the Supreme Court of Iowa.

This disposes of the claims of the complainant either to the relief of rescission against that company or to a claim against it for the value of their stock in the old companies. Insofar as the demurrer attacks the bill in its allegations and prayers dealing with those two matters, it will be sustained.

There are grounds of argument urged by the defendants in connection with the questions just disposed of, which the foregoing leaves unnoticed. Failure to deal with those grounds leaves them open.

The bill exhibits another ground of complaint against Phœnix Finance Corporation which rests on a theory different from that heretofore adverted to and discussed. The relief of rescission or, in the alternative, a decree for the money value of the old stock and a lien on the assets in that amount, which is based on the theory heretofore discussed,

rests upon the fundamental conception that the complainants are continuing in their position of repudiation of the sales and are continuing to claim rights in their roles of stockholders of the selling companies.

But the other ground of complaint rests on a conception entirely inconsistent with the one just stated. It is this—that the gold bonds, preferred stock, participating stock and cash which their selling corporations ordered Phœnix Finance Corporation to distribute to the complainants in liquidation of the old corporations, and which the complainants refused to receive, were held by Phœnix Finance Corpartion in express trust for the complainants, and that Phœnix Finance Corporation in violation of the trust had converted the said gold bonds, etc., to its own use and deprived the complainants of the same. Manifestly, if any relief is sought against Phoenix Finance Corporation on that score, it is upon the theory that the complainants have assented to the sales and desire to participate in their results. This position disaffirms the fundamental theory which the bill throughout many paragraphs and the brief of the complainants in many of its pages, strenuously labor to support. The complainants are in the position of seeking relief first on the ground of repudiation and at the same time relief on the ground of affirmance. The defendants, however, do not insist upon an objection to the bill based on the inconsistency of its theories.

If it be true as alleged that the Phœnix Finance Corporation has assumed a trust of the securities and cash to which the complainants are entitled if they choose to take them, and has converted the same to its own use, a good ground for relief against the alleged breach of trust is stated. Looking then at that one item of complaint against Phœnix Finance Corporation, the bill states a cause of action against it.

It now remains finally to consider the bill in its relation to the five defendants whose stock the complainants held, and the relief it seeks against them.

In *Graeser v. Phœnix Finance Corp. of Des Moines,* *supra,* the Iowa court at the close of its opinion expressed the view that any right of the stockholders in like situation with these complainants to be paid cash for their stock by their own corporations, should be determined by the courts of the domicile of the corporations.

The pending bill, however, is not framed to secure the relief of payment against either all or any of the five selling corporations in which the complainants held stock.

Those corporations, as a matter of fact have been dissolved since May, 1932. All their assets which consisted of bonds, stock and cash received by them from Phœnix Finance Corporation in exchange for their then exisiting assets, have been distributed, except that portion thereof which was ordered to be distributed among the complainants and other dissentients if there be any. Whether there are others does not appear.

One of the prayers for relief against the five selling corporations, is that receivers be appointed for them. If receivers were appointed for the five defendants, as prayed, the only assets the receivers could recover, as far as the bill discloses, are the very assets which when recovered belong to the complainants. It is difficult to see how the court would be justified in appointing receivers of the corporations to recover assets for the complainants which they themselves protest they do not want and which, if they conclude finally to accept, they may themselves maintain a suit to recover as their individual property, as is hereinbefore indicated. An appointment of receivers who would require to be compensated out of the assets would result in loss to the complainants.

The bill fails to show any purpose to be sought by the appointment of receivers. Until a case is alleged wherein the utility of a receivership is at least *prime facie* demonstarted, the court ought not to entertain a bill for the appointment. The receivers were doubtless asked for in order, on a theory of rescission, to recover all of the sold assets

and, upon liquidation of them into cash, to make distribution among the stockholders. Something to that effect is indicated somewhere in the lengthy brief of the complainants. Now that means that the case is one for rescission of the sales and restoration as far as may be to the *status quo ante*. For the reasons before indicated the bill fails to show that the complainants are entitled to relief of that character.

In addition to the prayer for receiverships against the five selling corporations, the only other relief sought against them is that their books, etc., be produced and impounded subject to the order of this court. Among the ten prayers for specific relief, the foregoing are all that relate to selling corporations. All the other prayers are directed to relief against the Phœnix Finance Corporation, which I think I am justified in saying the bill is aimed at as the primary and real defendant. The relief sought against the other defendants appears to be sought only as ancillary to and in aid of the case that is sought to be made against Phœnix Finance Corporation. Viewing the matter in that light, it follows that, as the opinion of the court is that no ground of relief is shown against the real defendant, relief which is ancillary to the principal case should be denied when the latter falls.

Order sustaining the demurrer to the extent indicated herein.