# PETER PETERSON AND ANOTHER v. NEW ENGLAND FURNITURE & CARPET COMPANY AND ANOTHER.[1]

June 20, 1941.

No. 32,612.

*Donald O. Wright,* for appellants.

[1]Reported in 299 N. W. 208.

*Fletcher, Dorsey, Barker, Colman & Barber, Leavitt R. Barker,* and *Henry Halladay,* for respondents.

HOLT, JUSTICE.

Plaintiffs appeal from an adverse judgment. The action was tried to the court and findings made and filed. Plaintiffs' motion for amended findings was denied.

These assignments of error are not sufficient under our rules to raise the question of the findings of fact not being supported by the evidence, *viz.,* "1. The Court erred in making its Findings of Fact numbered IV to XV, inclusive (ff. 373 to 401, incl.)." This does not challenge any one of the ten findings as not supported by the evidence. 1 Dunnell, Minn. Dig. (2 ed. & Supps.) §§ 357 and 358.

However, we think the decision herein rests on whether the findings of fact warrant the conclusions of law, and we consider the assignments of error sufficient for that purpose. There is no real controversy as to the facts. Plaintiffs in May, 1929, became the owners of 25 shares of the preferred capital stock of the New England Furniture & Carpet Company, a corporation created in 1926 under the laws of the state of Delaware, hereinafter referred to as the Delaware. This stock had a par value of $100 a share, and was entitled to seven per cent annual accumulative dividends, payable quarterly. Dividends thereon were paid accordingly until May, 1932, since which time none have been declared on that stock. From its organization the Delaware sought to provide a fund for the retirement of its preferred capital stock, but the result of the financial disturbance of 1929 soon exhausted this fund. In the fall of 1931, plaintiffs orally requested the Delaware to redeem their 25 shares, and, in answer thereto, received by mail this letter, exhibit B, dated October 15, 1931:

"Acknowledging the above request, we will purchase the 25 shares of The New England Furniture & Carpet Company's 7% Preferred Stock above described October 15, 1932.

"Same may be presented at our office on that date for redemption.

> "The New England Furniture & Carpet Co.
> "By L. C. Kellogg [Director]
> "M. Bryson, Treasurer"

In May, 1932, the directors of Delaware, on account of adverse business conditions, discontinued paying dividends on this stock and ceased making payments into the retirement fund created for the holders of that class of stock. During 1931 and to 1934, inclusive, Delaware sustained serious operating losses amounting to more than half a million dollars. As early as September 15, 1932, Delaware informed plaintiffs of the adverse business situation and that it could not purchase or retire their stock. Ever since May 15, 1932, so the court found,—

"no sum or sums have been available to the Delaware defendant, its officers, agents, or directors, or to the plaintiffs, or either of them, for or on account of such purchase or redemption of its said stock, and at all times since said date such purchase or redemption of the stock of the Delaware defendant by said defendant has been and now is unauthorized, prohibited, and forbidden under and by virtue of the terms and provisions of the certificate of incorporation of the Delaware defendant and under and by virtue of the laws of the state of Delaware."

Thus matters stood until February 1, 1935, when there were outstanding shares of preferred stock amounting at par value to $835,900, to which should be added $160,910.75, representing accrued and unpaid dividends thereon. If these were to be liquidated, creditors' rights having precedence, "it was quite likely" that the preferred shareholders "would have received nothing." Amongst the assets was a debt due from an affiliate company carried at $565,257, and this in turn had behind it a building mortgaged for $150,000, unsalable and of very doubtful liquidating value. The Delaware owed to its employes, listed as "Employees' Savings Fund," $61,866.08. Stockholders' meetings were held in

an effort to rehabilitate the Delaware. In April, 1935, such proceedings had so far progressed that the defendant New England Furniture Company was organized under the laws of this state. It will hereinafter be referred to as the Minnesota. An agreement was entered into between defendants whereby Delaware sold to Minnesota all of its assets. Minnesota agreed to pay the debts of Delaware (excepting only an item not presently important). New stock certificates for shares were given to Delaware or its nominees to replace the stock of its former preferred stockholders. Pursuant to and in conformity with Delaware law, more than 75 per cent of the preferred stockholders consented to the new arrangement. When the new deal finally was consummated, "more than 97% of the former holders of preferred stock of the Delaware defendant received and accepted shares of the Minnesota." Thus was accomplished "the only feasible method, means, and manner" whereby the assets, business, and property of Delaware could be preserved for the benefit of its stockholders. No stockholder's right was "in any way violated, impaired, or infringed by said sale and transfer."

The court was also of the view that inasmuch as nearly three years had passed between the time plaintiffs were informed of the change in the respective corporate functions of the two defendants, and at least at one of such meetings plaintiff Peter Peterson was present, "during all of which time plaintiffs * * * have sat idly by * * * but doing nothing to protect or preserve their claimed rights," and during all of which time the other stockholders, officers, and directors of defendants have acted and are still acting in good faith, therefore such a long time has elapsed as now to preclude them from complaining about "a duly proposed and regularly consummated transaction." As a consequence and upon the facts recited, the court directed a dismissal of plaintiffs' cause on its merits.

The only question presented is whether the trial court's action should be sustained or reversed. In our opinion it should be sus-

tained. Whether plaintiffs' preferred stock should be purchased or redeemed lay wholly in the power of the board of directors of the Delaware, acting in conformity to the law of the state of Delaware. It cannot be claimed, on this record, that the board so determined in respect to plaintiffs' shares. They rely wholly on exhibit B. A sale or purchase of these shares comes within our statute of frauds. 2 Mason Minn. St. 1927, § 8379. Exhibit B is not such a writing as the statute requires. It is not signed by plaintiffs—the sellers. They have not thereby agreed to sell. No price is stated. The writing is only an offer or proposal by two officers of the Delaware to buy plaintiffs' shares at a future date. Before that date arrived the offer was withdrawn. The testimony of Mr. Peterson, the plaintiff who acted for both, shows that he understood exhibit B as a mere offer, saying: "They sent me that [exhibit B] by mail, yes, and to come back next year, October 15, and see what he could do then." Plaintiffs did not appear at the office of the Delaware on October 15, 1932, and tender the shares, or even make protest until 1935. William Weisman Realty Co. v. Cohen, 157 Minn. 161, 195 N. W. 898.

But apart from the statute of frauds, plaintiffs' right to have their shares of stock retired or redeemed necessarily depends upon the law of the state of Delaware and the articles of incorporation of the Delaware. Axford v. Western Syndicate Inv. Co. 141 Minn. 412, 168 N. W. 97, 170 N. W. 587. Section 27 of the Delaware corporation law (Rev. Code Del. 1935, c. 65) authorizes the issue of preferred stock, and redemption or purchase thereof, subject to the provisions of its certificate of incorporation. The articles or certificate of incorporation of the Delaware provide:

"The preferred stock may be issued as and when the board of directors shall determine, and the holders thereof shall be entitled to receive dividends at the fixed rate of seven per cent (7%) per annum, and no more, payable in equal quarterly installments on the 15th day of February, May, August and November of each year, before any dividends shall be declared or paid upon or set

apart for any other class of stock now or hereafter authorized and before any sum shall be paid or set apart for the purchase or redemption of any stock now or hereafter authorized."

As above stated, no dividends on preferred stock were paid after May 15, 1932. And the court found there were no available funds thereafter for the purchase or redemption of such stock so that even if there had been a proper contract to purchase plaintiffs' stock it would have been unenforceable under the situation in which the Delaware was on October 15, 1932. Booth v. Union Fibre Co. 142 Minn. 127, 171 N. W. 307; In re Receivership of Internat'l Radiator Co. 10 Del. Ch. 358, 92 A. 255; Acker v. Girard Trust Co. (3 Cir.) 42 F. (2d) 37, 40. In the last cited case is this quotation from Rev. Code Del. 1915, § 1933:

"Every corporation organized under this Chapter shall have the power to purchase, hold, sell and transfer shares of its own capital stock: Provided that no such corporation shall use its funds or property for the purchase of its own shares of capital stock when such use would cause any impairment of the capital of the corporation."

It is clear from the record that a purchase of plaintiffs' stock in October, 1932, would have impaired the capital of the Delaware.

It also appears that the sale of the assets of the Delaware to the Minnesota was valid and binding on plaintiffs. Hill v. Page & Hill Co. 198 Minn. 30, 268 N. W. 705, 927, wherein, on the denial of a rehearing, Paterson v. Shattuck Arizona Copper Co. 186 Minn. 611, 244 N. W. 281, cited by plaintiffs, is distinguished on the facts. The instant sale or merger is, of course, governed by the law of Delaware. In Federal United Corp. v. Havender (Del. Sup.) 11 A. (2d) 331, is an exhaustive review of the law of Delaware as to rights of holders of preferred stock who refuse to accept the terms of a voted merger or sale of all the assets of a corporation in financial difficulties. The conclusion is that an objecting stockholder may not sit idly by and, when the merger or sale has

been accepted by the great majority of the stockholders, come into court to have the transaction set aside. Especially so, where there has been laches. Other courts have also so held in cases involving corporations organized under the laws of Delaware. United Milk Products Corp. v. Lovell (6 Cir.) 75 F. (2d) 923; Graeser v. Phoenix Finance Co. 218 Iowa, 1112, 254 N. W. 859. We agree with the conclusion of the trial court that plaintiffs were guilty of laches. They cannot now disturb the contract of the Delaware with the Minnesota. Surely they have no cause of action against the Minnesota.

Judgment affirmed.

HILTON, JUSTICE (concurring specially).

I reluctantly concur in the result reached by Mr. Justice Holt upon the sole ground that the assignments of error are insufficient to test whether the evidence supports the findings. To me it seems entirely conceivable that the corporation has used for other purposes funds allocated for redemption between October, 1931, when exhibit B was received, and May, 1932, when dividends were terminated. However, since the finding is that no funds were ever available thereafter from which to make redemption, this under the articles would excuse the corporation from its failure to redeem in October, 1932, notwithstanding that, in my judgment, exhibit B gave rise to a contractual obligation to redeem.

MR. CHIEF JUSTICE GALLAGHER took no part in the consideration or decision of this case.